REISSUED FOR PUBLICATION
APR 5 2019
OSM
U.S COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * *
HANANE M. SEID,                      *
                                     *    No. 17-604V
                 Petitioner,         *    Special Master Christian J. Moran
v.                                   *
                                     *
SECRETARY OF HEALTH                  *    Filed: March 4, 2019
AND HUMAN SERVICES,                  *
                                     *
                 Respondent.         *
* * * * * * * * * * * * * * * * * * *
```

Hanane M. Seid, pro se.
Robert P. Coleman III, United States Dep't of Justice, Washington, DC, for respondent.

## DECISION DISMISSING PETITION[1]

    Ms. Seid filed her petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. §300aa-10 through 34, on May 5, 2017. Ms. Seid claimed that she suffered from unspecified injuries following her receipt of a flu vaccine on September 21, 2013. Throughout the pendency of this proceeding, Ms. Seid has not complied with the undersigned's orders to prosecute her case by presenting evidence that favors her claims of causation. On November 28, 2018, the undersigned issued an order for Ms. Seid to show cause for why her claim should not be dismissed for her failure to prosecute the case and comply with the undersigned's orders. In response, Ms. Seid moved for a ruling on the record on

---

[1] Because this ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the ruling.

Fed Ex    8136 4199 5996

January 23, 2019. Ms. Seid argued that the evidence in the record "should support a ruling in favor of the petitioner." For the reasons explained below, the undersigned disagrees.

**Brief Factual Summary**

The facts surrounding Ms. Seid's condition were not well-developed by the petitioner and must be gleaned only from her affidavit and one set of medical records, only 32 pages in length.

Ms. Seid was 41 years old when she received an influenza vaccine on September 21, 2013. Immunization Record at 2.[2] By all accounts in the record, Ms. Seid was healthy following the vaccination until late April 2014. Kaiser Foundation Hospitals Medical Records ("Medical Records") at 14. She presented to the emergency room on May 1, 2014, with one week of diarrhea, abdominal pain, nausea, and headache. Id. Her physicians attributed her condition to viral gastroenteritis. Id. at 20. On May 4, 2014, Ms. Seid returned to urgent care with worsened symptoms including abdominal pain and tactile fevers and was then found to have acute pancreatitis. Id. Ms. Seid returned home against medical advice that same day. Id. at 21.

On May 8, 2014, Ms. Seid presented again to the local emergency department with reports of numbness and weakness. Id. at 21. The weakness developed into an ascending paralysis and Ms. Seid was eventually intubated to protect her airway. Id. By the end of May 2014, Ms. Seid's movement was limited to her neck and eyelids. Id. at 29.

The early medical records repeatedly identify GBS as the most likely cause of Ms. Seid's condition. Id. at 13, 14, 16, 20, 21, 22, 24, 29, 31. Ms. Seid's physicians repeatedly found it noteworthy that the onset of her paralysis immediately followed her viral gastritis and pancreatitis. Id. at 6, 7, 21, 22, 23, 26. And in fact, her treating physicians causally attributed the onset of the neurological disease to the infection, noting that her condition was most consistent with "GBS or AIDP following antecedent infectious etiology." Id. at 22. See also id. at 32 (noting that her antecedent diarrhea was supportive of a GBS diagnosis). Although GBS was identified as the most likely explanation of Ms. Seid's condition, the medical records make certain that GBS was never conclusively identified as the

---

[2] Ms. Seid's exhibits are not numbered. Accordingly, they are described by their contents.

2

cause, but instead as the most likely explanation in the differential diagnosis. Id. at 13, 14, 16, 20, 21, 22, 24, 29, 31. Because it was the physicians' primary concern, Ms. Seid was transferred to another facility to begin IVIG and plasmapheresis treatment for possible GBS. Id. at 22.

Subsequent EMG and MRI testing in June 2014 resulted in physicians concluding that Ms. Seid was, instead of GBS, more likely suffering from anterior horn cell disease.[3] Id. at 34-39. The cause of Ms. Seid's condition was never confirmed, despite follow-up testing by the CDC and the Columbia University Viral Detection Lab, which "returned negative for further clarification of exact etiology." Id. at 34. However, the physicians ultimately concluded that the most likely explanation was that her condition was the result of an "unknown polio-like virus." Id. at 34, 38.

The most recent records filed by Ms. Seid do not illuminate her current condition, but do indicate that as of the summer of 2014, she was undergoing rehabilitation with an uncertain prognosis. Id. at 37-38. In her petition, she notes that "she is unable to stand with the support of a walker and remains unable to fully function in her everyday life." Petition at ¶ 7.

**Procedural History**

Ms. Seid, pro se, filed her petition for compensation on May 5, 2017. She alleged that the flu vaccine she received on September 21, 2013 caused her to suffer from the neurological condition that manifested in May 2014.

The procedural history of Ms. Seid's case was detailed in the order to show cause issued on November 28, 2018 and is restated here.

During the initial status conference held on June 8, 2017, the undersigned communicated to the petitioner that she would need to obtain an expert report. Order, issued June 12, 2017. This was because, in the undersigned's experience in the Vaccine Program, the long delay between the vaccination date and the onset of her condition raised serious questions about petitioner's claim of causation, questions that could only be addressed by the petitioner providing expert opinion from a qualified individual. The undersigned ordered the petitioner to begin the process of identifying a qualified expert and to file a status report on her progress by Monday, July 24, 2017.

---

[3] The anterior horn is the section of the spinal cord containing motor neurons.

3

Ms. Seid did not comply with the July 24, 2017 deadline and on August 1, 2017, the undersigned ordered her to file a status report by Thursday, August 31, 2017. Order, issued Aug. 1, 2017. The petitioner was warned that her failure to respond may result in an order to show cause.

On August 30, 2017, Ms. Seid notified the court that she was now being represented by attorney Carl Kadlic, though she noted that he was still in the process of applying for admission to the Court of Federal Claims' Bar. The undersigned noted that until Mr. Kadlic was admitted to practice in this court, he would not be permitted to file a notice of appearance in Ms. Seid's vaccine petition. Order, issued Sep. 5, 2017.

On that same date, Ms. Seid filed a status report stating that she had obtained the services of Dr. Jonathan Rutchik to provide an opinion on causation. Ms. Seid stated that due to the amount of records involved, the preparation of the report would take "some time" and requested that a status conference be scheduled at least 90 days from the date of the status report. Pet'r's Rep., filed Aug. 30, 2017. A status conference was set for December 14, 2017. Order, issued Sep. 20, 2017.

On September 27, 2017, the undersigned issued proposed instructions for any expert opinion provided in Ms. Seid's case. The order provided that the instructions would become final if no objections or comments were made prior to October 10, 2017. Neither party objected or commented on the proposed instructions.

A status conference was held on January 8, 2018. During the status conference, the petitioner stated that her previously retained expert, Dr. Rutchik, would not be able to provide an opinion due to the petitioner's financial constraints. Order, issued Jan. 9, 2018. The petitioner requested additional time to secure another expert opinion. The petitioner was ordered to file a status report by Tuesday, March 13, 2018, with an update on her efforts to secure another expert opinion. The petitioner was again reminded to determine whether she would like to continue pro se or have an attorney enter an appearance on her behalf.

On March 19, 2018, Ms. Seid filed a status report stating, again, that she would be unable to retain Dr. Rutchik. The petitioner requested that a deadline be set for her to file a status report in 90 days so that she could have sufficient time to "either retain an expert or decide if this case is feasible to pursue."

The next day, the undersigned ordered the petitioner to file a status report by June 20, 2018, with an update on her progress in obtaining an expert witness. Order, issued Mar. 20, 2018. Ms. Seid was also provided additional information on her various options for exiting the vaccine program.

On June 18, 2018, Ms. Seid filed a status report stating that she was "thinking to withdraw the case due to the costs associated with an expert report." The petitioner requested additional time to decide how to proceed.

On June 25, 2018, the undersigned ordered the petitioner to file a status report on her next steps if she had not exited the Vaccine Program by August 8, 2018.

On August 13, 2018, Ms. Seid filed a status report stating that she was "still working on the options of exiting the vaccine program" and requesting "at least" three months to make her decision. On August 21, 2018, the undersigned set a status conference for September 4, 2018, to discuss the case with the petitioner.

During the status conference, Ms. Seid stated that she anticipated withdrawing from the Program but stated that she may still attempt to file an expert report. Order, issued Sep. 5, 2018. The undersigned noted that it had been nearly 15 months since Ms. Seid first stated that she was in the process of obtaining an expert report and that if Ms. Seid was going to pursue her petition by filing an expert report, she would need to actually do so. Otherwise, she should withdraw her petition. The undersigned ordered Ms. Seid to file her expert report by October 4, 2018. Ms. Seid was warned that a failure to comply with this deadline would result in an order to show cause for why Ms. Seid's case should not be dismissed.

Because Ms. Seid failed to comply with the order to file an expert report, the undersigned issued an order to show cause for why Ms. Seid's petition should not be dismissed. Order, issued Nov. 28, 2018. In the order, petitioner was warned that she must comply with orders to prosecute her case or face dismissal. Id. at 3 (citing Padmanabhan v. Sec'y of Health & Human Servs., 638 Fed. App'x 1013 (Fed. Cir. 2016); Sapharas v. Sec'y of Health & Human Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Human Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993) (table); Vaccine Rule 21(c)).

The day before Ms. Seid's show of cause was due, she filed a brief motion requesting that a ruling be made on the record. Pet'r's Mot., filed Jan. 23, 2019. In her motion, she noted that "even though the petitioner could not be able to

provide the medical expert due to a financial constraint," the record as submitted "should support a ruling in favor of the petitioner." Id.

On February 12, 2019, the Secretary filed a brief response. In his response, the Secretary argued that preponderant evidence did not support a conclusion that the vaccination caused Ms. Seid's condition and that, accordingly, the petition should be dismissed. Resp't's Resp., filed Feb. 12, 2019, at 3-6.

**Analysis and Conclusion**

Petitioners are required to establish their cases by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

Ms. Seid's petition contains no evidence from which the undersigned can conclude that her condition is the result of the vaccination she received on September 21, 2013. The only relationship in the record between the vaccination and the onset of her condition is the fact that her condition followed the vaccination. "Temporal association is not sufficient, however, to establish causation in fact." Grant v. Sec'y of Health & Human Servs., 956 F.2d 1144, 1148 (Fed. Cir. 1992). Even more, the temporal association between the vaccination and the onset of Ms. Seid's condition was hardly proximate. Thirty-two weeks passed between the vaccination and the onset of her paralysis. In the undersigned's experience with similar disorders, this timeframe is inconsistent with a finding of causation. And indeed, the physicians treating Ms. Seid never even considered her vaccination as a possible cause of the disorder.

The physicians, however, did identify another possible cause, a viral infection. In fact, the physicians stated with some certainty that a viral infection was what caused Ms. Seid's illness. See Medical Records at 38 (concluding, in one of the most recent medical records, that the cause of Ms. Seid's anterior horn cell disease was "likely from unknown polio-like viral etiology"). The undersigned sees no reason to doubt the conclusion of Ms. Seid's physicians. See Capizzano v. Sec'y of Health & Human Servs., 440 F.3d 1317, 1326 (Fed. Cir. 2006) (holding that special masters must consider the view of treating physicians).

Ms. Seid's case is tragic. The medical records show that she was a young and healthy woman preparing for her honeymoon when she was struck down by an illness that has, perhaps permanently, changed her life and the lives of her loved ones. The uncertainty regarding how Ms. Seid's illness came to be can only amplify their frustration. However, when Congress established the Vaccine Act, it directed special masters to only award compensation from the Vaccine Trust Fund when petitioners provide preponderant evidence of a vaccine injury. Ms. Seid has not done so here despite having been provided a full and fair opportunity to present her case. Accordingly, the undersigned must deny her petition for compensation.

The Clerk's Office is instructed to enter judgment in accord with this decision.

**IT IS SO ORDERED.**

*Christian J. Moran*
Christian J. Moran
Special Master